## Case No. 15,605.

### UNITED STATES v. LINN.

[Crabbe, 307.] [3]

District Court, E. D. Pennsylvania. Dec. 12, 1839.

#### CUSTOMS DUTIES—BOND—SURETY.

Under the fifth section of the act of July 14, 1832 (4 Story's Laws, 2323 [4 Stat. 591]), a surety is liable on a bond given for duties under $200.

## Case No. 15,606.

### UNITED STATES v. LINN et al.

[2 McLean, 501.] [1]

Circuit Court, D. Illinois. June Term, 1841. [2]

#### PAYMENT—APPLICATION—SURETIES—ACTION ON OFFICIAL BOND—PREVIOUS DEFALCATION.

1. The general doctrine as to the application of payments, is, that if the debtor fail to apply them, the government may do so. If both fail, the law will make the application, as the principles of justice shall require.

[Cited in U. S. v. Bicket, Case No. 14,590.]

[Cited in State v. Sooy. 39 N. J. Law, 547.]

2. Where different sets of sureties are concerned, this rule does not govern.

[Cited in brief in McCune v. Belt, 45 Mo. 176.]

3. Sureties are only bound, on a receiver of public moneys' bond, that he shall pay over all moneys received, after the execution of the bond.

4. They are not bound for any previous defalcation.

5. And the government can not bind them, by the exercise of any supposed power, to make application of the payments made.

6. If the sureties are at all responsible, they must be made so by strict law.

7. As between different sureties, the court will apply the payments so as to avoid injustice. And this they can do from the face of the transcript.

8. Where the payments exceed the receipts in any one quarter, the excess shall be applied to the payment of the previous quarter, though such quarter be prior to the date of the bond.

9. Where a general payment has been made some years after expiration of the bond, the payment must be applied, as stated on the transcript, to discharge, pro tanto, the general balance.

At law.

Mr. Baker and Mr. Butterfield, U. S. Dist. Atty., for the United States.

Logan, Brown & Davis, for defendants.

OPINION OF THE COURT. This action is brought on an official bond, given by [William] Linn, as receiver of public moneys, and signed by the other defendants, as sureties. The defendants pleaded that Linn had paid over all moneys which had come to his possession, as receiver. The bond, dated the 2d of May, 1831, was given in evidence, and, also, a transcript from the books of the treasury, showing the accounts of Linn, from the 12th of January, 1831, to the 12th of February, 1835. From the face of this transcript, it appeared that Linn was charged with various sums of money, received prior to the date of the bond; and, from some of the quarterly payments, it appeared that he had paid over more money than he received within the quarter. The credits, as they were received, were entered on the books, and the balance against the receiver was carried, as a debit, to the accounts of the succeeding quarter; and, in that form, the general balance was made up against him. On this state of facts, it was contended that the government had a right to apply the money received, subsequently to the date of the bond, to the discharge of any balance which the receiver owed at the date of the bond; and, that the payment had been so applied, appeared from the transcript.

The doctrine, as to the application of payments, is, at all times, important; but it becomes peculiarly so when the rights of sureties are affected. This question was somewhat examined in the case of U. S. v. January and Patterson, 7 Cranch [11 U. S.] 373. In that case the supervisor of the revenue for the district of Kentucky (not Ohio), in due form of law, appointed John Arthur, collector of the revenue. On the 25th of August, 1797, he and his sureties executed a bond, for the faithful performance of his duties, in the penalty of $4,000. On the 23d of March, 1799, the collector gave another bond, with Patterson, surety, in the penalty of $6,000. The duties of the collector were commenced, and, from that time up to the 30th of June, 1802, he was charged with having collected $30,584.99½. On the settlement of his account, in 1803, he was in arrear $16,181.15½, and suits were instituted on each of the bonds. Performance was pleaded, to which the plaintiffs replied, that he had not collected and paid over, &c. Pending the suit, Arthur died. The supervisor kept one general account, only, against the collector. On the trial the general account was exhibited, showing the above balance. They also showed the balance appearing to be due, when the second bond was

[3] [Reported by William H. Crabbe, Esq.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Reversed in 1 How. (42 U. S.) 104.]

given, amounting to the sum of $6,483.59½. The defendants proved, by a witness, that James Morrison, the late supervisor, informed him that Arthur had paid a sufficient sum to discharge the bond first given. This fact was proved by the supervisor, and he admits that he may have told January that the whole of the bond would be paid off, if the payments made by Arthur should be so applied, and that it was his opinion that was the proper application of them. On this state of facts, the plaintiffs moved the court to instruct the jury, that the promise of the supervisor was not, of itself, an appropriation of the payments, unless it was followed by some act of appropriation. The court overruled the motion, and instructed the jury, if they believed the supervisor had made the election and promise, as proved, it was a declaration of his election how the payments should be applied, and that an entry on the books to that effect was unnecessary. To this opinion an exception was taken. The court say the debtor may make the application of a payment at the time of making it; and, if he fail to do so, the creditor may make it. That, if neither exercise this right, the law will make the application. And, the court further say, that a majority of the judges are of opinion, that the rule, adopted in ordinary cases, is not applicable to a case circumstanced as this is, where the receiver is a public officer, not interested in the event of the suit, and who receives on account of the United States, where the payments are indiscriminately made, and where different sureties, under distinct obligations, are interested. It will be generally admitted that moneys arising due, and collected subsequently to the execution of the second bond, can not be applied to the first bond, without manifest injury to the surety in the second bond, and vice versa; justice between different sureties can only be done by reference to the collector's books. The judgment of the circuit court was reversed.

In U. S. v. Kirkpatrick [9 Wheat. (22 U. S.) 720], the court say "the general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments according to its own notions of justice. It is certainly too late for either party to claim a right to make an appropriation, after the controversy has arisen, and, a fortiori, at the time of the trial. In cases like the present, of long and running accounts, where debits and credits are perpetually occurring, and no balances are otherwise adjusted, than for the mere purpose of making rests, we are of opinion that payments ought to be applied to extinguish the debts, according to the priority of time, so that the credits are to be deemed payments, pro tanto, of the debts antecedently due." This view was given on an instruction of the circuit court, to which exception was taken, "that the payments made by the collector, for whom Kirkpatrick was surety, might, under the circumstances, be applied to the discharge of the balance due from collections made under the acts, which were in force when the bond was given." Now, what were the circumstances referred to? Reed was appointed collector the 11th of November, 1813, by the president, which appointment continued until the end of the succeeding session of the senate. The 24th of January, 1814, he was reappointed to the same office, by the president and senate. And the question was, whether the responsibility of the sureties extended beyond the duration of the first commission, and the court held, very properly, that it did not.

It will be observed that, in this case, there was no question between the liabilities of different sets of sureties. The general rule as to the application of the payments, under such circumstances, was unquestionably correct. But the doctrine here laid down does, in no respect, conflict with the previous decisions in U. S. v. January and Patterson [supra]. In that case the court say, the ordinary rule which governs the application of payments does not apply. And the reason was, that distinct interests arose under different surety bonds, which took the case out of the general rule. And that this is the true principle, will be shown by subsequently adjudicated cases. It may be proper here to remark that, in the case of Miller v. Stewart, 9 Wheat. [22 U. S.] 680, the case preceding that against Kirkpatrick, the court held that the contract of a surety is to be construed strictly, and is not to be extended beyond the fair scope of its terms.

In U. S. v. Nicholl, 12 Wheat. [25 U. S.] 505, the court say: "The case of U. S. v. January and Patterson, 7 Cranch [11 U. S.] 572, is, in point, to show that, as to any disbursements of money, after the 30th of November, 1822, for which Swartwout was entitled to credit, it was at the election of the government to apply them to either account. But there is no necessity for the application of the principle to this case." The court well remarked, that there was no necessity for the application of the above principle in that case. What was meant by the power of the government to apply the payments, as decided in U. S. v. January and Patterson [supra], is not easily apprehended. For it is manifest that, in that case, the court decided no such principle, but directly the contrary. They lay down the general principle as above stated, and then say that the rule does not apply where there are different sets of sureties. That, to do justice to them, a reference must be had to the books, and, consequently, to the dates of the entries. Mr. Justice Tremble, who wrote the opinion in the Case of Nicholl, must have used this language without referring to the case of U. S. v. January and Patterson, or

he must have referred to the general principle there laid down, and not to the exception on which the decision of the case turned.

There is no question that has ever come before the supreme court, better settled, than that a surety can only be bound from the date of his bond. No matter, if the officer, at the time the surety is given, be a defaulter, unless the bond shall specially stipulate for past performances, or the money previously received shall be in the hands of the officer, the surety is not bound. This question has frequently arisen on bonds given by receivers of public moneys. A case of this kind was decided at the last term, between U. S. v. Boyd, 15 Pet. [40 U. S.] 187. Boyd's duties, as receiver, commenced the 27th of December, 1836; the bond, on which the suit was brought, was dated the 15th of June, 1837; and the condition was, "that Boyd should faithfully discharge the duties of his office of receiver of public moneys, for four years, from the 27th of December, 1836;" and the court held that the sureties were not bound for any defalcation, prior to the date of the bond. And they refer to the case of U. S. v. Giles, 9 Cranch [13 U. S.] 212, where it was held, "if the marshal, before the date of his official bond, receive money upon an execution due to the United States, with orders from the comptroller to pay it into the Bank of the United States, which he neglects to do, the sureties in his official bond, executed afterwards, are not liable therefor, upon the bond, although the money remained in the marshal's hands after the execution of the bond." That was a very strong case. For we should have supposed that a liability might arise on the bond for a failure to pay over the money, in the hands of the officer, at the time the bond was executed. The bond is, for the faithful performance of his duties, generally; and it is supposed to be a continuing duty to pay over money in his hands, as well after as before the execution of the bond. And this view is sustained in Farrar v. U. S., 5 Pet. [30 U. S.] 373. The court there say, that "for any sum paid to Rector (surveyor general) prior to the execution of the bond, there is but one ground on which the sureties could be held bound, and that is, on the assumption that he still held the money in bank, or otherwise. If still in his hands, he was, up to that time, bailee to the government."

Now, the question arises, whether the government, in the case of a receiver of public moneys, can apply the moneys received by him, and paid over subsequently to the execution of his bond, in discharge of a sum due by him prior to the date of the bond. If it can not do this, in the language of the court, in the case against January and Patterson, the ordinary rule in regard to the application of payments, does not apply where the interests of sureties are involved. And this we take to be sound law. The general

principle is a sound one, but it can not apply to the prejudice of third parties. The contract of the surety is, that the officer shall pay over all moneys that shall come into his hands, after the execution of the bond. Where money is thus received and paid over, to apply it to any other purpose than a discharge of the liability arising subsequently to the bond, and hold the sureties responsible, would be an essential alteration in the contract. Not an alteration in form, but in substance; and this, it is clear, the government has no power to make.

That such a power should be assumed to be exercised, under any supposed right in the government to make an application of the payments, is extraordinary. Such an act is not only in direct opposition to the contract, but it is a fraud upon the sureties— such a fraud as no court, the facts being undeniable, could sanction. It will be recollected that the application is the act of the government. And, if it have not power to make it under the above circumstances, no such power exists, where the rights of third parties are involved. The doctrine well applies between the principal, his sureties, and the government. The sureties are bound, not for the performance of certain duties, but, positively, to pay so much money. Now, we will suppose that the principal is indebted to the government in a sum for which no security has been given, and, under such circumstances, a general payment is made, no one can doubt that the government may apply the payment to the discharge of either debt. And the sureties can not complain of this application; for the bond is without a condition, or, at least, it does not bind the principal to pay over moneys received from a particular source. It is this condition in the bond, to pay over moneys received, for instance, in payment of public lands, that takes the case out of the ordinary doctrine on this subject. And, unless the rights of sureties are totally disregarded, this exception must exist. It was made by the court, in the case of January and Patterson; it is sanctioned by the immutable principles of justice, and can not, in good faith, be departed from.

We are, then, clearly of the opinion that the government could not apply the moneys received, and paid over by Linn, since the execution of the bond on which this suit is brought, in discharge of any balance due before the bond was given. And the court and jury can judge, from the face of the transcript, of the applications to be made, so as to avoid injustice to the sureties, which, at various times, were given by the receiver. Where the payments of any quarter exceed the receipts for such quarter, the excess shall be applied to the balance against the receiver at the beginning of the quarter. And this upon the ground, that it is not presumable the receiver made payments in advance, of anticipated receipts. The surplus

will be presumed to have been paid out of moneys in his hands, prior to the execution of the bond, provided previous quarters, from the date of the bond, have been fully paid. It appears that a payment of $23,000 was made, in 1838, by the receiver. This was after his resignation, and several years after the four years had expired, for which the bond was given. The court, in regard to this payment, can make no other application of it than has been made in the transcript. It will go to discharge, pro tanto, the general balance against the receiver and his sureties.

On the above principles, the case was submitted to the jury, who found a large balance in favor of the United States, for which a judgment was rendered.

[NOTE. For the opinion of the supreme court in this case upon certificate of division of opinion, 15 Pet. (40 U. S.) 290. Upon a writ of error in the supreme court, the judgment of the circuit court was reversed. 1 How. (42 U. S.) 104.]